EARL GOSNELL, BY HIS NEXT FRIEND, CARSON GOSNELL v. JAMES RAMSEY, A MINOR, O. G. RAMSEY, GUARDIAN AD LITEM FOR JAMES RAMSEY, AND O. G. RAMSEY.

(Filed 4 February, 1966.)

1. Negligence § 22—

An offer by defendant to pay the hospital bills incurred by plaintiff as a result of injury because the accident occurred on defendant's property, *held* not an admission of liability and properly excluded.

**2. Master and Servant § 29—**

In this action to recover for injuries received when the body of a dump truck on which they were working fell upon plaintiff and one of defendants, a cousin, while the boys were working on the dump truck on the farm of the other defendant, the father of the injured defendant, *held,* nonsuit was properly entered, if not upon the principle question of liability then upon the ground of contributory negligence.

APPEAL by plaintiff from *McLean, J.,* March-April 1965 Regular Civil Session of MADISON.

Civil action to recover damages for personal injuries.

Plaintiff and defendants offered evidence. From a judgment of compulsory nonsuit entered at the close of all the evidence, plaintiff appeals.

*A. E. Leake for plaintiff appellant.*
*Clarence N. Gilbert for defendant appellees.*

PER CURIAM. This is a summary of plaintiff's evidence, except when quoted: On 10 March 1964, the day he was injured, he was 18 years of age. His health was good, and he was physically strong and able to perform heavy labor. He had gone to the tenth grade in school. He grew up on a farm. His first cousin O. G. Ramsey owned a farm and operated a dairy business in Madison County. O. G. Ramsey had two sons, Stanley aged 19 years and James aged 16 years, who lived on the farm and helped him in his dairy business. O. G. Ramsey owned and had on the farm two tractors, a pickup truck, and a 1951 Model Ford two-ton dump truck. The dump truck had a dump bed, and the front of the bed would raise. O. G. Ramsey used this dump truck to haul feed for his cows.

During the last part of February 1964 he went to O. G. Ramsey's farm and asked him for a job. O. G. Ramsey told him he did not have much to do this time of year, but that he could stay around, help him work, and he would pay him a little, but could not pay him much. Following this conversation, he went to work for O. G. Ramsey at his farm and dairy, living in his home with him. O. G. Ramsey told him that he would tell him what to do and he would take orders from him, and if he was not around his 16-year-old son James would be his boss and he would take orders from him.

On 10 March 1964 he had had very little experience with tractors, and had had no experience with trucks with hydraulic dump beds, and did not know how the dump bed on such a truck operated. Neither O. G. Ramsey nor James Ramsey had explained to him

how the dump bed operated or warned him of any danger that might be involved in a dump bed. About 11 a.m. on the morning of 10 March 1964 James Ramsey told him the dump bed on his father's dump truck would not lift with a load in it, though it would lift when empty, and it would have to have some kind of thicker oil to go in it. At this time the dump truck was parked by O. G. Ramsey's home, and the dump bed was empty and down level. James Ramsey manipulated the hoist and raised the dump bed. It has two gears that hold the dump bed up. James Ramsey told him to get a bucket, get under the dump bed on its left side and hold the bucket under a bolt or plug that he was going to take out on the front of the lift and catch the oil as it drained out. He got under the dump bed across the frame as directed by James Ramsey. Then James Ramsey with a pipe wrench took out the bolt or plug on the left side of the hydraulic lift, and he held the bucket under the place where the plug was taken out and caught the oil that drained out. Plaintiff testified: "It just took a few minutes to drain the one on the left side. I'd say about 30 minutes." After he had caught all the oil that drained out on the left side, James Ramsey told him to go to the right side and do the same thing. He did so, and was still under the dump bed. James Ramsey then took out the bolt or plug on the right side and immediately the dump bed fell pinning him between the bottom of the dump bed and the frame of the truck. He testified: "As to how the bed came down, all I know is when he took the bolt out, it hit us, snap of your finger, we didn't have time to move or nothing." James Ramsey was also caught between the bottom of the dump bed and the frame of the truck. Both were seriously injured.

On the Saturday before the accident he was standing near the dump truck watching Wayne Ramsey place a new gasket in it. Wayne Ramsey told him to stay away from it, because he could get hurt.

Plaintiff alleges in his complaint that O. G. Ramsey was negligent in failing to properly instruct the plaintiff with reference to dangerous machinery, when he knew, or should have known, that the plaintiff was unfamiliar with such dangerous machinery and ignorant of how it operated and the dangers involved; in failing to furnish plaintiff with adequate supervision in view of plaintiff's age and lack of experience; and in putting plaintiff to work under the supervision of his son James Ramsey, when he knew, or should have known, that James Ramsey was young, inexperienced, and careless; and that such negligence was a proximate cause of his injuries. Plaintiff further alleges in his complaint that James Ramsey was

GOSNELL *v.* RAMSEY.

negligent in failing to properly supervise and instruct the plaintiff in the duties of his employment; in ordering plaintiff, when he was working under his supervision, into a position of peril; and in carelessly removing plugs and draining the hydraulic oil or fluid from the hoist or lift on the 1951 Model Ford truck and thereby causing the bed to fall upon and injure plaintiff; and that O. G. Ramsey under such circumstances is responsible under the doctrine of *respondeat superior.*

Defendants offered evidence. Plaintiff's counsel asked O. G. Ramsey on cross-examination a question to this effect: If he did not tell plaintiff's father when plaintiff and James Ramsey were in the hospital that he would pay plaintiff's hospital expenses. Defendants objected, and the trial judge directed the jury to go to their room. In the absence of the jury, O. G. Ramsey answered the question as follows: "I told Carson, Earl's daddy, at the hospital that since the boy got hurt at my home, that I was very sorry that either one of the boys got hurt, he told me that he did not have the money to pay his hospital bill, I told him that since the boys got hurt at my home, that I did not have the money either, but I would borrow the money and pay his boy's hospital bill." Plaintiff's counsel then asked O. G. Ramsey this question: "Now, I'll ask you if you did not tell him that since it happened there, that you felt responsible for it having happened?" O. G. Ramsey replied as follows: "I could have, I can't recall that, but we were both very much disturbed about the condition of these boys, they was hurt seriously." The trial judge excluded this evidence from the jury, and plaintiff assigns his ruling as error.

Plaintiff contends that O. G. Ramsey's statement, "I would borrow the money and pay his boy's hospital bill," is an admission of liability or responsibility by O. G. Ramsey. In our opinion, and we so hold, O. G. Ramsey's statements excluded by the judge, considering the surrounding circumstances, do not indicate the admission of any fault on his part or that of his son, but were a voluntary offer of assistance made upon an impulse of benevolence or sympathy and may not be considered an admission of liability or culpable causation. This is supported by our following cases: *Barber v. R. R.,* 193 N.C. 691, 138 S.E. 17; *Norman v. Porter,* 197 N.C. 222, 148 S.E. 41; *Patrick v. Bryan,* 202 N.C. 62, 162 S.E. 207; *Hughes v. Enterprises,* 245 N.C. 131, 95 S.E. 2d 577. In *Arnold v. Owens,* 78 F. 2d 495 (on appeal from the District Court of the United States for the Eastern District of North Carolina), it was held that an offer by the owner of a truck which struck a pedestrian to pay hospital expenses, of itself, is not evidence of liability. This ruling is supported by citation of numerous cases, including our own. Plain-

tiff's assignment of error to the exclusion of this evidence is over-ruled.

Defendants filed a joint answer in which they deny the allegations of plaintiff's complaint, deny that plaintiff was employed by O. G. Ramsey, deny that James Ramsey was foreman of his father's farm, and deny that plaintiff's injuries proximately resulted from any negligent acts or omissions on the part of either defendant. And for a first further answer and defense they allege that plaintiff, who is a blood relative of the defendants, came to O. G. Ramsey's house and asked that he might reside there as a member of the family, that plaintiff is older and more experienced than James Ramsey, and that O. G. Ramsey gave no directions or orders to plaintiff or to anyone to attempt to repair the dump truck, and that neither of the defendants had any reason to know or anticipate that the dump bed would fall. And for a second further answer and defense they allege that if plaintiff were an employee of the defendants, which they deny, then plaintiff assumed such risks as were involved in general farm work which he purported to do. And for a third further answer and defense they plead conditionally plaintiff's contributory negligence.

Defendants offered evidence in support of the allegations in their answer.

James Ramsey testified in substance: His father never designated him as foreman. He never gave orders to plaintiff. He had never changed the oil in the hoist on the dump truck before 10 March 1964. His father did not instruct him to change the oil. He does not know whether he drained any oil from the dump truck on 10 March 1964. He knows nothing about what happened that day. The dump bed fell on him on Tuesday, 10 March 1964. The next thing he remembers is waking up in the hospital on Monday following that Tuesday. He does not know what happened to him on 10 March 1964.

Plaintiff assigns as error the allowance by the court of defendants' motion for a judgment of compulsory nonsuit made at the close of all the evidence, and the judgment of nonsuit.

Considering plaintiff's evidence in the light most favorable to him, in the circumstances disclosed by the record, we are constrained to hold that the defendants' motion for judgment of compulsory nonsuit should have been sustained, if not upon the principal question of liability, then upon the ground of contributory negligence.

The judgment of compulsory nonsuit below is

Affirmed.